UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM D. TIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:24-cv-02051-SHM-tmp |
| | ) | |
| SHELBY COUNTY DETENTION CENTER, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**ORDER MODIFYING THE DOCKET;**
**DISMISSING IN PART AND PROCEEDING IN PART THE SECOND AMENDED**
**COMPLAINT (ECF NO. 21);**
**DIRECTING CLERK TO ISSUE SERVICE OF PROCESS FOR CERTAIN CLAIMS;**
**DIRECTING CLERK TO MAIL FORM;**
**GRANTING MOTION FOR EXTENSION OF TIME (ECF NO. 28);**
**AND DENYING OTHER PENDING MOTIONS (ECF NOS. 30, 32 & 33)**

---

Before the Court are: (1) Tims's second amended complaint for violation of civil rights under 42 U.S.C. § 1983 (ECF No. 21 (the "SAC"))[1]; (2) Tims's motion for extension of time to file a motion seeking appointment of counsel (ECF No. 28); (3) Tims's second motion "to protect video evidence" (ECF No. 30); (4) Tims's motion to "have the Defendants to turn over all evidence to Plaintiff" (ECF No. 32); and (5) Tims's fifth motion seeking appointment of counsel (ECF No. 33; *see also* ECF Nos. No. 9, 15, 16 & 23).

For the reasons explained below: (1) the SAC (ECF No. 21) is **DISMISSED WITH PREJUDICE IN PART** and **PROCEEDED IN PART**; (2) the motion for extension of time

---

[1] When Tims filed the complaint, he was incarcerated at the Shelby County Detention Center (the "SCDC"), in Memphis, Tennessee. According to the Federal Bureau of Prisons ("BOP") inmate locator website, Tims is presently confined at the Federal Correctional Institution in Forrest City, Arkansas (the "FCI-Forrest City"). (*See* https://www.bop.gov/inmateloc/ (BOP Inmate Locator website) (inmate register number 31479-076) (last accessed July 21, 2026).)

(ECF No. 28) is **GRANTED**; and (3) Tims's other pending Motions (ECF Nos. 30, 32 & 33) are

**DENIED**.

## I.     PROCEDURAL BACKGROUND

The procedural history of this case, from Tims's filing of the complaint (ECF No. 1)

through entry of the Court's Order on September 27, 2024 (ECF No. 14 (the "Screening Order")),

is summarized in the Screening Order and is not restated here.  (*See id*. at PageID 50-51.)

In the Screening Order, the Court:

(1) Dismissed with prejudice, for Tims's failure to state a claim to relief as a matter
of law, his claims in the Consolidated Complaint (ECF Nos. 1 & 9) (a) against the
Shelby County Detention Center (the "SCDC"), (b) claims against "etc.," and (c)
claims on behalf of inmates at the SCDC other than Tims (claims 1(a)-(c) are
referred to as the "Claims Dismissed With Prejudice");

(2) Dismissed without prejudice, for Tims's failure to allege facts stating a claim to
relief, his claims in the Consolidated Complaint against (a) Shelby County,
Tennessee (the "County"), (b) the City of Memphis, Tennessee (the "City"), (c)
Sergeant Felts, correctional officer Racardo Jones, correctional officer Jasmine
Gandy, the Mayor of Shelby County, the Sheriff of Shelby County, Sergeant
Dodson, the Internal Affairs Supervisor, and SCDC administrator Reese Walker
(collectively, the "Individual Defendants"), (d) WellPath Medical Group
("WellPath"), (e) the "unknown nurse" and (f) the "3 unknown … officers"
(Defendants 2(e)-(f) are collectively referred to as the "Insufficiently Named
Defendants") (claims 2(a)-(f) are referred to as the "Claims Dismissed Without
Prejudice");

(3) Denied with prejudice Tims's claims for prosecution of criminal charges against
the Defendants based on the events alleged in the Consolidated Complaint (the
"Criminal Charge Claims"); and

(4) Dismissed without prejudice Tims's motion for a protective order (ECF No. 2
at PageID 11-12) and Tims's first motion seeking appointment of counsel (ECF
No. 9 at PageID 26).

(ECF No. 14 at PageID 57-62 & 64-65.)  The Court denied leave to amend the Claims Dismissed

With Prejudice and the Criminal Charge Claims.  (*Id*. at PageID 64.)  The Court granted leave to

amend the Claims Dismissed Without Prejudice.  (*Id*.)

On August 18, 2025, the Court directed Tims to address his claims against WellPath

Medical Group and Wellpath because of the bankruptcy proceedings then pending in the United

2

States Bankruptcy Court for the Southern District of Texas, Houston Division, *see In Re Wellpath Holdings, Inc*., No. 24-90533 (Bankr. S.D. Tx. May 1, 2025).  (ECF No. 25 at PageID 108-12.)

On August 21, 2025, the Court: (1) denied Tims's second, third, and fourth motions seeking appointment of counsel (ECF Nos. 15, 16 & 23); (2) construed the SAC (ECF No. 21) as timely filed; (3) and denied Tims's request that the Court compel the Defendants to produce "all documents" (ECF No. 19 at PageID 82-83).  (ECF No. 26 at PageID 113-17.)

On September 19, 2025, the Court: (1) dismissed without prejudice Tims's claims against an "Unknown Nurse" from WellPath Medical Group, Wellpath, and "Wellpath providers"; and (2) directed the Clerk to terminate an "Unknown Nurse" from WellPath Medical Group, Wellpath, and "Wellpath providers" as defendants.  (ECF No. 27 at PageID 118-19.)

## II.    THE SAC

### A. The D Dorm Incident

In the SAC, Tims alleges that on December 12, 2023, after he "had a verbal altercation with another inmate" at the SCDC, Tims "decided it may be best to move" from his pod in Golf Building D Dorm to another cell.  (ECF No. 21 at PageID 91.)  Tims "knocked on [the] glass in front of the pod to get Sergeant Felts's attention."  (*Id*.)  Tims alleges that he and Sergeant Felts "have had prior issues," and she "never liked" Tims.  (*Id*.)  As Sergeant Felts approached the pod on December 12, 2023, she insulted Tims "for no apparent reason."  (*Id*.)  Tims and Felts "argued back and forth," she "never addressed [Tims's] issue," and Felts directed Tims to "pack [his] stuff" for transfer to segregation.  (*Id*.)  As Tims exited the pod, correctional officer Racardo Jones "sucker punched" Tims "in the side of the face" and correctional officer Jasmine Gandy "sprayed" Tims.  (*Id*.)  Tims alleges that Felts, Jones, and Gandy "beat me […] with closed fists […] until the whole unit of inmates intervened."  (*Id*. at PageID 91 & 94.)  Tims acknowledges that he "did swing back in fear of my life" and that Sergeant Felts "was hit after she busted my right cheek with her walkie talkie like a bat."  (*Id*. at PageID 91 & 92.)  Next, "other officers arrived [and

3

Felts] was taken to [a] classroom." (*Id*. at PageID 91 (the December 12, 2023 D Dorm events alleged in the SAC are referred to as the "D Dorm Incident").)

Tims alleges that he did not provoke, and posed no threat to, Felts, Jones, and Gandy before or during the D Dorm Incident. Tims was not handcuffed when he was transported to the Special Housing Unit (the "S.H.U.") after the D Dorm Incident on December 12, 2023. (*Id*. at PageID 92.) Tims alleges the D Dorm Incident was captured on the SCDC's surveillance camera. (*Id*. at PageID 94.)

### B. **The Classroom Incident**

Tims alleges that, after the D Dorm Incident, he was taken to a classroom in restraints. (*Id*. at PageID 91, 93 & 94.) Tims's allegations about what happened next are ambiguous. He alleges that an unknown correctional officer "attacked [Tims] while in handcuffs" in the classroom. (*Id*. at PageID 93-94.) However, Tims also alleges that "other officers intervened" when Tims was "about [to be] attacked by "a[n] unknown correctional officer" in the classroom. (*Id*. at PageID 91.) Tims alleges that he "spelled to a camera in sign language 'in fear for my life.'" (*Id*. at PageID 91 (the December 12, 2023 classroom events alleged in the SAC are referred to as the "Classroom Incident").)

### C. **The Medical Transport Incident**

Tims alleges that, after the Classroom Incident, he was "taken to [the jail's] medical [office] by three unknown black male Scorpion Squad black team [members]" (the "Three Unknown Correctional Officers"). (*Id*. at PageID 91.) Tims alleges that, when he tried to comply with a command to "slip my hand back behind my back," he was "spray[ed], punched, kicked, [and] stomped" in his ribs and then "dragged to medical." (*Id*. at PageID 91-92 (the "Medical Transport Incident").) Tims does not allege with particularity the conduct attributable to each of the Three Unknown Correctional Officers during the Medical Transport Incident. (*See id*.) Tims alleges

4

generally that, while he was handcuffed, the "John Does beat me with closed fist[s]."  (*Id*. at PageID 94.)

Tims alleges that, once he arrived at the SCDC's medical office on December 12, 2023, an unnamed WellPath nurse (the "Unknown Nurse") checked Tims's vital signs and gave him an alcohol pad to apply to his bruised nose, although Tims "could not stand up straight" and "couldn't b[a]r[e]ly walk bent over clutching [his] broken ribs."  (*Id*. at PageID 92.)  Tims alleges that the Unknown Nurse and an unnamed correctional officer "ridiculed" Tims and refused to transport him to an outside medical facility, "saying this is what happens when you hit a female [Felts]." (*Id*.)  Tims alleges that the Internal Affairs Supervisor, after hearing Tims's recorded "story," "promised" Tims on December 12, 2023 he "would be taken to medical and to hospital," but "[h]elp never came" and "I could have died."  (*Id*. )

Tims alleges that, on December 14, 2023, Lieutenant Williams "got me help after 2 days [of] me begging for every officer to help me."  (*Id*.)  Tims was transported to Regional One Hospital in Memphis, Tennessee, on December 14, 2023.  (*Id*. at PageID 93.)  At Regional One, a doctor "immediately rushed [Tims] to the trauma unit."  (*Id*.)  Tims alleges that a CT scan showed: "#7 rib broken"; a "severe concussion from Sergeant Felts's walkie talkie"; collapsed sinus cavity; and "several bruises and minor abrasions."  (*Id*. at PageID 93-94.)

## D.  **Grievances After The Medical Transport Incident**

Tims alleges that he filed several grievances, but was "only threatened with write-ups if I continued to file them on the facility and Gandy."  (*Id*. at PageID 93 (alleging that Felts and Gandy "constantly targeted me" and that Tims "live[s] in constant fear now for my life").)

## E.  **Claims In The SAC**

The SAC is construed to allege claims of:

(1) excessive force against (a) Felts, (b) Gandy, (c) Jones, and (d) the Three Unknown Correctional Officers;

(2) deprivation of medical care against (a) the Unknown Nurse, and (b) the Internal Affairs Supervisor;

(3) retaliation against (a) Felts and (b) Gandy;

(4) failure to train against (a) the County and (b) Shelby County Government; and

(5) failure to protect against Walker.

Tims sues ten (10) Defendants in the SAC:

(1) the County (ECF No. 21 at PageID 88-89 & 95);
(2) "Shelby County Government" (*id*. at PageID 95 & 97);
(3) the City (*id*. at PageID 88-89);
(4) Gandy (*id*. at PageID 88-89, 94 & 97);
(5) Jones (*id*. at PageID 88-89, 94 & 97);
(6) Felts (*id*. at PageID 88, 94 & 97);
(7) Internal Affairs Supervisor (*id*. at PageID 95);
(8) "3 unknown black male […] Scorpion Squad […] John Doe[s]" (*id*. at PageID 91, 94-95 & 97);
(9) the "unknown nurse on 12-12-14 [sic] night shift" (*id*. at PageID 97); and
(10) SCDC administrator Reese Walker (*id*. at PageID 98).[2]

Tims sues the Defendants in their official and individual capacities.  (*Id*. at PageID 94-95.)

Tims seeks seventy million dollars ($70,000,000.00).  (*Id*. at PageID 95.)

The Clerk shall **MODIFY** the docket to add as a Defendant: Jane Doe WellPath Nurse working the night shift at the Shelby County Detention Center on December 12, 2023.  (*See id*. at PageID 92 & 97.)

## III.   SCREENING THE SAC

The legal standard for screening the SAC pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA"), and the requirements to state a claim under § 1983, were set forth in the Screening Order and are not restated here.  (*See* ECF No. 14 at PageID 55-56.)

## IV.   ANALYSIS

---

[2]   Tims lists "Sgt. Dodson, Internal Affairs Supervisor, 3 unknown black male John Doe[s], Jasmine Gandy, [and] Racardo Jones" on page eight (8) of the SAC.  (ECF No. 21 at PageID 95.) Tims subsequently alleges in the SAC that "I ain't suing her [Dodson] because she tried to help me."  (*Id*. at PageID 98.)

A. **<u>Claims Against The County, The City, And "Shelby County Government"; And Official Capacity Claims Against Felts, Gandy, Jones, The Three Unknown Correctional Officers, And Walker</u>**

Tims sues the County and the City. (ECF No. 21 at PageID 88.) Tims's official capacity claims against Felts, Gandy, Jones, the Three Unknown Correctional Officers, and Walker (*see id*. at PageID 94-95) are construed as claims against their employer during the relevant period – *i.e.*, the County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Tims does not allege facts describing any policy or custom of the County or the City, much less an unconstitutional policy or custom pursuant to which Felts, Gandy, Jones, the Three Unknown Correctional Officers, and Walker acted to deprive Tims of his constitutional rights. Tims alleges instead that the Defendants mistreated Tims and violated his constitutional rights in ways uniquely personal and distinct to Tims's circumstances during the D Dorm Incident, the Classroom Incident, and the Medical Transport Incident.

Tims's failure-to-train claim against the County and the "Shelby County Government" (ECF No. 21 at PageID 95 & 97) fails for additional reasons. First, collective liability – *i.e.*, when claims are brought against groups of persons such as "government officials" – is not permitted under § 1983. A group of people, such as the "County Government," is not a "person" subject to

7

suit pursuant to § 1983. *See, e.g.*, *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (concluding that, because "person" for purposes of § 1983 includes individuals and "bodies politic and corporate," a prison's medical department is not a "person" under § 1983); *Price v. West Tennessee State Penitentiary*, 2025 WL 5089238, at *6 (W.D. Tenn. Jan. 24, 2025) (citing *Artry v. Wilson Cnty. Jail*, No. 3:19-cv-0309, 2019 WL 4748321, at *2 (M.D. Tenn. Sept. 30, 2019)); *Hunter v. Washtenaw Cnty. Sheriff Jail*, No. 20-10534, 2021 WL 5832784, at *3 (E.D. Mich. Oct. 19, 2021) ("A prison's medical department is not an entity with a corporate or political existence. The same principle applies to county jails") (citing *Hix*, 196 F. App'x at 355-56) (other citations omitted).

Second, to prevail on a failure-to-train claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a plaintiff must show the failure is a result of the municipality's deliberate indifference, which a plaintiff may prove by showing either "(1) a 'pattern of similar constitutional violations by untrained employees' or (2) 'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.'" *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738–39 (6th Cir. 2015)). When a claim relies on a single violation, a plaintiff must satisfy three elements: "(1) that the County's 'training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Id.* (quoting *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018)). Addressing the second element, the Supreme Court has said the "unconstitutional consequences of failing to train" should be "patently obvious" to evince a municipality's deliberate indifference under *Monell*. *See Connick v. Thompson*, 563 U.S. 51, 64 (2011). Tims's sole, conclusory allegation that "Shelby County Government didn't properly train

8

their employees not to beat inmates and break their bones as punishment" (ECF No. 21 at PageID 97) does not satisfy any of these elements.

Tims's claims in the SAC against (1) the County, (2) the City, (3) "Shelby County Government," and (4) Felts, Gandy, Jones, the Three Unknown Correctional Officers, and Walker in their official capacities are **DISMISSED WITH PREJUDICE** for failure to allege facts stating a claim to relief.

### B. Deprivation Of Medical Care Claim Against The Unknown Nurse And The Internal Affairs Supervisor In Their Official And Individual Capacities

Tims's allegations about (1) the Unknown WellPath Nurse's medical care of Tims on December 12, 2023 and (2) the Internal Affairs Supervisor's unfulfilled "promise[]" of outside medical care are construed as a claim of deprivation of medical care in violation of the Eighth Amendment. (*See* ECF No. 21 at PageID 92.) Federal Rule of Civil Procedure 10(a) requires a plaintiff to "name all the parties" in a complaint. Service of process cannot be made on an unidentified party. The filing of a complaint against an unknown defendant is insufficient to state a claim and does not toll the running of the statute of limitation. *See Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 548-49 (6th Cir. 2016). Tims's allegations in the SAC against the Unknown Nurse and the unknown Internal Affairs Supervisor fail to state a claim to relief and are **DISMISSED WITH PREJUDICE**.

### C. Claim Of Excessive Force Against Felts, Gandy, Jones, And The Three Unknown Correctional Officers In Their Individual Capacities

Tims alleges that (1) Felts, Gandy, and Jones used excessive force during the D Dorm Incident and (2) the Three Unknown Correctional Officers used excessive force during the Medical Transport Incident. (ECF No. 21 at PageID 91-94.)

Tims does not allege whether he is a pretrial detainee or a convicted inmate. The Court construes Tim's claims using the more lenient standard for a pretrial detainee.

The Due Process Clause of the Fourteenth Amendment is the proper basis for a pre-

trial detainee who brings a § 1983 action for excessive force. *See Kingsley v. Hendrickson*, 576 U.S. 389, 393 (2015). *Kingsley* established "a two-prong inquiry for Fourteenth Amendment excessive-force claims." *Hale v. Boyle Cnty.*, 18 F.4th 845, 852 (6th Cir. 2021). First, "an official must purposefully, knowingly, or ('possibly') recklessly engage in the alleged physical contact with the detained person." *Id.* (citing *Kingsley*, 576 U.S. at 396-97 (internal citations omitted)). Second, "the official's use of force must be objectively unreasonable." *Id.*

The *Kingsley* standard should not be applied mechanically and "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The analysis defers to "'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). The Supreme Court has articulated the following non-exhaustive list of factors that should be balanced:

[1] the relationship between the need for the use of force and the amount of force used;

[2] the extent of the plaintiff's injury;

[3] any effort made by the officer to temper or to limit the amount of force;

[4] the severity of the security problem at issue;

[5] the threat reasonably perceived by the officer; and

[6] whether the plaintiff was actively resisting.

*Id.* (quoting *Graham*, 490 U.S. at 396).

The "excessive-force claimant must show something more than *de minimis* force" to establish a constitutional violation under the Fourteenth Amendment. *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (citations omitted). "[D]e minimis uses of physical force" rarely

violate societal standards and do not violate the Constitution. *See Hudson v. McMillan*, 503 U.S. 1, 9–10 (1992). The Sixth Circuit has found quick, non-injurious actions against pre-trial detainees, such as a "karate chop" or a malevolent shove to be *de minimis. See Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 530-31 (6th Cir. 2018); *see Erickson v. Gogebic County Michigan*, 133 F.4th 703, 709-10 (6th Cir. 2025). "Although a pretrial detainee's injuries must be more than *de minimis* to support a constitutional violation, they need not be 'serious' or 'significant,' as long as there is some degree of actual injury." *United States v. Budd*, 496 F.3d 517, 530-31 (6th Cir. 2007) (internal citations omitted) (citation omitted).

### 1.   <u>Felts, Gandy, And Jones During The D Dorm Incident</u>

Tims alleges facts from which to plausibly infer that, during the D Dorm Incident, Felts, Gandy, and Jones purposefully and knowingly engaged in the use of force described in the SAC. Tims alleges that: (1) Jones "sucker punched" Tims "in the side of the face" when Tims exited his pod, although Felts had commanded Tims to do so (ECF No. 21 at PageID 91); (2) Gandy "sprayed" Tims with chemical agent, although Tims had not provoked officers or presented a threat of harm (*id*.); (3) Felts "busted [Tims's] right cheek with her walkie talkie like a bat" (*id*. at PageID 91, 92 & 93-94); and (4) Felts, Jones, and Gandy "beat me […] with closed fists […] until the whole unit of inmates intervened." (*Id*. at PageID 91 & 94.) Tims alleges he suffered a broken rib, a concussion, a collapsed sinus cavity, bruises, and abrasions because of the force used against him during the D Dorm Incident. (*Id*. at PageID 93-94.)

Tims alleges facts from which to plausibly infer that the use of force by Felts, Gandy, and Jones during the D Dorm Incident was objectively unreasonable. Tims alleges that Felts was "cursing [Felts] all kinda [sic] 'bitch' 'mother[expletive]' white boy." (*Id*. at PageID 91.) Tims alleges that Felts, Gandy, and Jones persisted in "beat[ing]" Tims "until the whole unit of inmates intervened." (*Id*.) Tims alleges that he did not provoke the D Dorm Incident. He alleges that he had only sought Sergeant Felts's attention to change Tims's pod assignment. (*Id*. at PageID 91-

11

92.)  Tims alleges facts about the D Dorm Incident demonstrating a plausible basis from which to infer that Felts, Gandy, and Jones used objectively unreasonable force on Tims.

Tims's claim in the SAC of excessive force against Felts, Gandy, and Jones in their individual capacities **SHALL PROCEED**.

### 2. <u>Three Unknown Correctional Officers During Medical Transport Incident</u>

As explained *supra*, given that Fed. R. Civ. P. 10(a) requires a plaintiff to "name all the parties" in a complaint.  The filing of a complaint against an unknown defendant is insufficient to state a claim and does not toll the running of the statute of limitation.  *See Wiggins*, 641 F. App'x at 548-49.  Tims's allegations in the SAC against the Three Unknown Correctional Officers fail to state a claim to relief and are **DISMISSED WITH PREJUDICE**.

### D. <u>Claim Of Retaliation Against Felts And Gandy In Their Individual Capacities</u>

Tims alleges that, when he filed several grievances about the D Dorm Incident, the Classroom Incident, and the Medical Transport Incident, he was "threatened with write-ups if I continued to file them on the facility and Gandy."  (ECF No. 21 at PageID 93 (alleging that Felts and Gandy "constantly targeted me" and that Tims "live[s] in constant fear now for my life").)  Tims's allegations are construed as a claim of retaliation in violation of the First Amendment.

A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in ... civil rights claims."  *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.  "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v.*

12

*Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "Temporal proximity can provide circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill v. Lappin*, 630 F.3d 486, 475-76 (6th Cir. 2010)); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same).

Tims's allegations in the SAC demonstrate the three elements of a retaliation cause of action under the First Amendment.

First, Tims alleges he was engaged in protected conduct -- *i.e.*, filing grievances about the D Dorm Incident, the Classroom Incident, and the Medical Transport Incident -- when Felts and Gandy threatened him "with write-ups" if he persisted with grievances. (ECF No. 21 at PageID 93.) Filing a prison grievance is protected conduct. *Hill*, 630 F.3d at 472.

Second, Tims alleges that Felts and Gandy took adverse action against Tims for filing grievances -- *i.e.*, threats of disciplinary write-up reports. (ECF No. 21 at PageID 93.) "An adverse action is one that is '*capable* of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Hill*, 630 F.3d at 472 (quoting *Bell*, 308 F.3d at 606 (emphasis in original)). "*Actual* deterrence need not be shown." *Hill*, 630 F.3d at 472 (quoting *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (emphasis in original)). "Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill*, 630 F.3d at 472 (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)); *see id.* ("the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation") (quoting *Scott v. Churchill*, 377 F.3d 565, 571–72 (6th Cir. 2004)). Viewing the facts alleged in the SAC in the light most favorable to Tims and drawing all reasonable inferences in his favor,

13

Tims's allegations of Felts and Gandy's threats to write disciplinary reports are enough to plausibly allege an adverse action.

Third, Tims alleges that, after he had filed several grievances, Felts and Gandy "threatened [me] with write-ups if I continued to file them." (ECF No. 21 at PageID 93.)  Close temporal proximity between (1) Tims's filing of grievances and (2) the threats of disciplinary charges by Felts and Gandy can be plausibly inferred from the factual allegations in the SAC.

Tims's claim of retaliation against Felts and Gandy in their individual capacities **SHALL PROCEED**.

### E.  <u>Claim Of Failure To Protect Against Walker In His Individual Capacity</u>

Tims alleges that:

> Mr. Walker never came to see me monthly after [the] incident.  He never came after I was assaulted to check on me or even show he cared except when he came and tried to trick me into some kind of recorded 'slick' confession against myself.  Mr. Walker won't answer my letters.  He is responsible for all accounts [and] incidents here at the facility.  He is responsible for the treatment of inmates.  He is responsible for me not getting medical treatment for 2 days when I could have died.  He is equally responsible as the ones who done [sic] this to me.  He should be sued for violation of my rights to be protected from harm inside his facility.  He is responsible for all events because he runs the jail.

(ECF No. 21 at PageID 98.)  Tims's allegations are construed as a claim of Walker's failure to protect Tims, in violation of Tims's Eighth Amendment right against cruel and unusual punishment.  (*Id*.)

The Eighth Amendment prohibits cruel and unusual punishments.  *See  generally Wilson v. Seiter*, 501 U.S. 294 (1991).  An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005).  The subjective component requires a prisoner to demonstrate that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*,

14

511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. "[T]he prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38. The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767-68 (6th Cir. 2011) ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge").

Even if the SAC were liberally construed to allege that the D Dorm Incident, the Classroom Incident, and the Medical Transport Incident were conditions posing a substantial risk of serious harm to Tims because Felts "never liked" Tims and had "prior issues" with Felts (*see* ECF No. 21 at PageID 91), Tims would not allege facts demonstrating the Eighth Amendment's subjective prong. Tims does not allege that Walker personally knew of Felts's supposed animosity. Tims does not allege facts demonstrating that Walker was "deliberately indifferent" to a substantial risk that the D Dorm Incident, the Classroom Incident, and the Medical Transport Incident would occur and that Tims would suffer serious harm during those events. (*See id*. at PageID 98.) Instead, Tims alleges only that Walker is liable under § 1983 because "[h]e is responsible for all events [and] he runs the jail." (*Id.*) Tims's allegation is construed as a claim of failure to supervise under the doctrine of respondeat superior. As explained below, that claim lacks merit.

To state a cognizable § 1983 claim, a plaintiff must allege some personal involvement by each of the named defendants. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (requiring personal involvement to state a § 1983 claim). "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller*, 408 F.3d at 817 n. 3). Individual prison officials may not be held liable based *solely* on their responsibility to oversee or supervise prison operations or personnel. *See Griffith*

15

*v. Franklin Cnty., Kentucky*, 975 F.3d 554, 579 (6th Cir. 2020) ("There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it") (citation omitted); *Herndon v. Heyns*, 702 F. App'x 325, 327 (6th Cir. 2017) (affirming judgment for warden after finding that the complaint failed to "allege any personal involvement" or "wrongdoing on [warden's] part"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish § 1983 liability").

The Sixth Circuit has emphasized the significance of personal involvement for actionable § 1983 claims:

> [I]ndividual liability on a failure to supervise theory "must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted). A simple failure to act, without "a showing of 'direct responsibility' for the actions of the individual officers," will not suffice to establish supervisory liability. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 873-74 (6th Cir. 1982) (quoting *Rizzo v. Goode*, 423 U.S. 362, 376, 96 S. Ct. 598, 46 L.Ed.2d 561 (1976)). Instead, "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). [A] supervisor may be liable if he or she "abandons the specific duties of his [or her] position in the face of actual knowledge of a breakdown in the proper workings of the department." *Winkler v. Madison Cnty.*, 893 F.3d 877, 898 (6th Cir. 2018) (citation and internal alterations omitted). The supervisor must have abdicated his or her job responsibility, and the "*active performance* of the [supervisor's] individual job function" must have directly resulted in the constitutional injury. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (emphasis in original). This means that, "at a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross*, 818 F.3d at 242 (citation and internal quotation marks omitted).

*Zakora v. Chrisman*, 44 F.4th 452, 476 (6th Cir. 2022). Tims's failure-to-supervise claim against Walker does not satisfy these requirements.

Tims does not allege that Walker: (1) knew of (a) past animosity between Felts and Tims or (b) past aggressive conduct against inmates, if any, by Gandy, Jones, and the Three Unknown Correctional Officers; and (2) ignored that information. Tims does not allege that Walker (1) was personally involved in the D Dorm Incident, the Classroom Incident, or the Medical Transport

16

Incident or (2) encouraged, implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *See Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002). Simply alleging that Walker "runs the jail" (*see* ECF No. 21 at PageID 98) is not a basis for constitutional liability.

Tims's claims against Walker for (1) violation of the Eighth Amendment and (2) failure to supervise are **DISMISSED WITH PREJUDICE** for failure to allege facts stating a claim to relief.

## V.    AMENDMENT

The Sixth Circuit has held that a District Court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts"). Because the Court granted leave to amend the Claims Dismissed Without Prejudice in the Consolidated Amended Complaint (ECF Nos. 1 & 9), *see* ECF No. 14 at PageID 64, further leave to amend would be futile. The Court **DENIES** leave to amend the SAC.

### VI.   MOTION FOR EXTENSION OF TIME AND FIFTH MOTION SEEKING APPOINTMENT OF COUNSEL

In Tims's motion for extension of time to file a fifth motion seeking appointment of counsel[3], he alleges that he has been "on lockdown 24 hours [a] day" and does "not have access to a computer." (ECF No. 28 at PageID 120-21.) For good cause shown, Tims's motion for an extension of time to file a motion seeking appointment of counsel (ECF No. 28) is **GRANTED**.

In Tims's fifth motion seeking appointment of counsel, he alleges that: (1) he "can't afford counsel"; (2) his "imprisonment will greatly limit his ability to litigate and watch videos. The issues in this case are so complex and will require many hours, days, [and] weeks of research and investigation that the Plaintiff is not able to do"; (3) he "has very limited access to [the] law library and no knowledge of law. The Plaintiff has very poor education"; (4) "the trial is gonna [sic] be very many witnesses that will involve conflicting testimony[,] [and] counsel would better organize, cross-examine[,] [and] present evidence"; and (5) Tims "suffers from PTSD, extreme anxiety, ADHD, [and] depression. The Plaintiff will have to face these people [witnesses] under extreme duress." (ECF No. 33 at PageID 136-37.)

Tims's grounds for his fifth motion seeking appointment of counsel do not warrant the relief he seeks.

"The court may request an attorney to represent any person unable to afford counsel," *see* 28 U.S.C. § 1915(e)(1), but "[t]here is no constitutional or ... statutory right to counsel in federal civil cases." *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993); *accord Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). The appointment of counsel in a civil proceeding is a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir.

---

[3] *See* ECF Nos. 9, 15, 16 & 23 (Tims's first, second, third, and fourth motions for counsel); ECF No. 14 at PageID 64-65 (dismissing without prejudice Tims's first motion for counsel); ECF No. 26 at PageID 117 (denying without prejudice Tims's second, third, and fourth motions for counsel).

18

1993).  Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are slim.  *Id.*

The decision to appoint counsel for an indigent litigant in a civil case is a matter vested within the broad discretion of the Court.  *Childs v. Pellegrin*, 822 F.2d 1384 (6th Cir. 1987); *see also Lavado*, 992 F.2d at 604-05.  To determine whether appointment of counsel is justified, a court examines the pleadings and documents to assess the merits of the claims, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *see also Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) ("The key [to determining whether there are exceptional circumstances] is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court.  Where the facts and issues are simple, he or she usually will not need such help").

Tims's claim of indigency (ECF No. 33 at PageID 136) is not an exceptional circumstance that warrants the appointment of counsel in a civil case.  *See Masciarella v. Newhouse*, No. 20-1206, 2021 WL 1318323, at *6 (W.D. Tenn. Apr. 8, 2021).

To the extent Tims seeks appointment of counsel because he is incarcerated (ECF No. 33 at PageID 36), his argument is unpersuasive.  Tims's "imprisonment" (*id.*) is typical, not exceptional. *See Murray v. Giarratano*, 492 U.S. 1, 7 (1989) (*pro se* litigant); *Richmond v. Settles*, 450 F. App'x 448, 452-53 (6th Cir. 2011) (indigent litigant); *Vasser v. Anderson Cnty. Det. Ctr. Doctor*, No. 3:24-cv-257, 2024 WL 3297341, at *1 (E.D. Tenn. July 3, 2024) ("Plaintiff's allegations regarding his incarceration, self-representation, and lack of an attorney are typical of prisoner plaintiffs").

To the extent Tims seeks appointment of counsel because he lacks formal legal training (ECF No. 33 at PageID 36), his argument is unpersuasive.  *See Saddozai v. Arqueza*, No. 18-cv-3972, 2022 WL 16824324, at *1 (N.D. Cal. Oct. 7, 2022) (denying motion for reconsideration of

19

order denying appointment of counsel because "circumstances involving ... lack of legal knowledge … are not exceptional among prisoner-plaintiffs"); *see also Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *2 (6th Cir. June 23, 2000) ("The district court had no duty to remedy [Plaintiff's] lack of legal training by appointing counsel, as no constitutional right to counsel exists in a civil case") (citing *Lavado*, 992 F.2d at 605-06).  Tims's "circumstances [being untrained in the law] are typical to most prisoners."  *See Bowers v. Power*, No. 3:17-cv-01599, 2018 WL 1794730, at *2 (M.D. Tenn. Apr. 16, 2018); *Dalton v. Murfreesboro Police Dep't*, No. 3:18-cv-0402, 2018 WL 3438777, at *1 (M.D. Tenn. July 17, 2018) (inmates are typically indigent and untrained *pro se* litigants) (citation omitted).  The allegations in Tims's SAC (ECF No. 21) are not complex.  Tims alleges remaining claims of excessive force and retaliation, which are areas of well-settled law under § 1983.

To the extent Tims seeks appointment of counsel because he has "very limited access to [the] law library" (ECF No. 33 at PageID 36), Tims's argument is without merit.  The complete denial of access to a law library, in the absence of any other form of legal assistance, constitutes a deprivation of the right of access to the courts.  *See Simmons v. United States*, 974 F.3d 791, 795 (6th Cir. 2020).  A total deprivation of access to both legal materials and legal assistance also constitutes an exceptional circumstance justifying appointment of counsel, because that deprivation nullifies a prisoner's "ability ... to represent himself."  *Lanier*, 332 F.3d at 1006 (quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)).  Tims does not allege total deprivation of law library access.  (*See* ECF No. 33 at PageID 36.)  Tims does not provide essential facts necessary for the Court to evaluate meaningfully Tims's allegation of "very limited access to [the] law library."  (*See id.*)  For example, Tims does not say, and the Court is left to guess, the scope of law library access Tims has at the FCI-Forrest City.  (*See id.*)

Tims's allegation of "PTSD, extreme anxiety, ADHD, [and] depression" (ECF No. 33 at PageID 137) is insufficiently detailed to demonstrate exceptional circumstances.  Tims's fifth

20

motion seeking appointment of counsel contains no facts demonstrating that Tims cannot understand and respond to Court orders. *See Torres v. Jorrin*, No. 20-cv-891, 2020 WL 5909529, at *1 (S.D. Cal. Oct. 6, 2020) (denying the plaintiff's motion for reconsideration of the denial of appointment of counsel because his allegations of "a learning disability" are "typical of almost every *pro se* prisoner civil rights plaintiff and alone are insufficient to satisfy the 'exceptional circumstances' standard required to justify appointment of counsel") (citing *Jones v. Kuppinger*, No. 13-cv-451, 2015 WL 5522290, at *3-4 (E.D. Cal. Sept. 17, 2015) ("Circumstances common to most prisoners, such as a deficient general education, lack of knowledge of the law, mental illness and disability, do not in themselves establish exceptional circumstances warranting appointment of voluntary civil counsel")); *Williams v. Kernan*, No. 18-cv-1833, 2019 WL 1099842, at *3 (S.D. Cal. Mar. 8, 2019) (concluding that the *pro se* plaintiff failed to demonstrate exceptional circumstances warranting the appointment of counsel where he failed to present evidence of incompetence and did not claim that his alleged mental disabilities prevented him from comprehending court orders); *Miller v. Parker*, No. 17-cv-371, 2018 WL 1022578, at *3 (E.D. Tenn. Feb. 22, 2018) (concluding that the plaintiff failed to demonstrate exceptional circumstances warranting appointment of counsel where he alleged "'mental[] and intellectual disability'").

Tims's fifth motion seeking appointment of counsel (ECF No. 33) is **DENIED** because Tims does not demonstrate exceptional circumstances.

## VII.    SECOND MOTION "TO PROTECT VIDEO EVIDENCE"

On January 25, 2024, Tims filed a "motion for protective order of evidence." (ECF No. 2 at PageID 11-12 (seeking "protective orders on all video CCTV of the night of 12-12-23 7pm to 1am").) In its Screening Order, the Court denied that motion without prejudice, subject to Tims's right to re-file his request if the case proceeded. (ECF No. 14 at PageID 51 & 65.) In Tims's second motion "to protect video evidence," he "ask[s] this Honorable Court to enter a[n] order to protect video servallance [sic] from incident on December 12, 2023 of the assault on Plaintiff."

(ECF No. 30 at PageID 127.)  Tims's pending motion is construed as a request for entry of a temporary restraining order or preliminary injunction to prevent the Defendants' spoliation of video recordings relevant to the D Dorm Incident, Classroom Incident, and Medical Transport Incident.[4]

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).  A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  *Boddy v. Grech*, No. 25-3490, 2026 WL 1678609, at *3 (6th Cir. June 10, 2026)  (quoting *Winter*, 555 U.S. at 20).  Under the PLRA, preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

Tims alleges that "[s]ome jails delete them [video surveillance tapes] after 3 years up to 7 years [….] There is a lot of video footage to be presented as evidence.  I pray that this Court will see that it[']s a key piece of evidence.  The whole day the whole incident needs to be protected from being deleted.  The whole 3 days December 12, 2023, December 13, 2023 [and] December 14, 2023."  (ECF No. 30 at PageID 127.)

The Court **DENIES** Tims's motion for entry of temporary restraining order or preliminary injunction (ECF No. 30) protecting video recordings relevant to Tims's claims in the SAC

---

[4]  To the extent Tims styles his second motion "to protect video evidence" as a motion for a protective order, Tims incorrectly seeks relief pursuant to Federal Rule of Civil Procedure 26(c)(1). That Rule is inapplicable in the instant context.  Rule 26(c) authorizes a court to enter a protective order "for good cause shown" to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Rather than seeking to shield discovery of videos of the D Dorm Incident, which is what a Rule 26(c)(1) protective order would purport to do, the plausible inference from Tims's motion is that he seeks to preserve the existence of videos of the D Dorm Incident, so that he may pursue discovery of the videos.

22

because Tims has not established that he would suffer irreparable harm in the absence of preliminary relief. Federal Rule of Civil Procedure 37(e) addresses spoliation of electronically stored information and provides sanctions against an offending party including a finding that the spoiled evidence was unfavorable to that party.[5] Therefore, the Court denies Tims's motion for injunctive relief (ECF No. 30).

## VIII.  MOTION TO COMPEL EVIDENCE

Tims "ask[s] this Honorable Court to turn over all evidence to Plaintiff." (ECF No. 32 at PageID 133.) Tims contends that he "has sent numerous letters asking for all reports, video evidence from the night of December 12, 2023, the night of assault, and up to 2 days afterward. I can't get the names of the 3 officers who brutely [sic] assaulted me outside of the G-Dorm. All I need is all reports – names of officers involved and name[s] of nurses involved who did my intake the night I was assaulted so I can name all Defendants." (*Id*.) Tims alleges that he "also want[s] video from when I was housed in the Dorm […] when this Lieutenant and Officer Cole Sergeant Felts boyfriend [sic] came in my cell and threatened retaliation [….] I need that video." (*Id*. at PageID 135.) Tims does not attach to his motion the "numerous letters asking for all reports [and] video evidence" that he claims to have sent to unnamed persons. (*See* ECF No. 32 at PageID 133.)

Tims's motion to compel evidence does not merit the relief he seeks.

---

[5] "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e).

23

Tims must pursue his discovery requests from Defendants themselves as the case proceeds, not by Court order. *See, e.g.*, Fed. R. Civ. P. 34 ("A party may serve on any other party a request ... to produce ... any designated documents or electronically stored information ...."). No discovery response can be compelled from any Defendants at this time.

Tims's motion to compel evidence (ECF No. 32) is **DENIED**.

IX.    **CONCLUSION**

For the reasons explained above:

A.   The following claims in the SAC are **DISMISSED WITH PREJUDICE** for failure to allege facts stating a claim to relief, *see* 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2):

> (1) claims against (a) the County, (b) the City, and (c) "Shelby County Government";
> (2) official capacity claims against (a) Felts, (b) Gandy, (c) Jones, and (d) Walker;
> (3) claims of deprivation of medical care against the Unknown Nurse and the Internal Affairs Supervisor in their official and individual capacities; and
> (4) claim of failure to protect against Walker in his individual capacity
> (collectively, the "SAC Claims Dismissed With Prejudice").

Leave to amend the SAC Claims Dismissed With Prejudice is **DENIED**.

B.    The following claims in the SAC **SHALL PROCEED**:

> (1) individual capacity claim of excessive force against (a) Felts, (b) Gandy, and (c) Jones; and
> (2) individual capacity claim of retaliation against (a) Felts and (b) Gandy.

C.    The Clerk is **ORDERED** to issue process for (1) Sergeant Felts, (2) Jasmine Gandy, and (3) Racardo Jones (collectively, the "Proceeded Defendants"), and to deliver that process to the U.S. Marshal for service. Service shall be made on the Proceeded Defendants pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) & (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

D.    The Clerk **SHALL MAIL** the parties the form for Notice, Consent, And Reference Of A Civil Action To A Magistrate Judge (AO 85).

E.      It is further **ORDERED** that Tims shall serve a copy of every subsequent document he files in this case on the attorneys for the Proceeded Defendants, or on any of those Defendants personally if that Defendant is unrepresented.  Tims shall make a certificate of service on every document he files.

F.      The motion for extension of time (ECF No. 28) is **GRANTED**, and all other pending motions (ECF Nos. 30, 32 & 33) are **DENIED**.

G.      Tims is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence.  Failure to comply with these requirements, or any other Order of the Court, may result in the dismissal of this case without further notice.

**IT IS SO ORDERED** this ___27th___ day of July, 2026.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE